**DISTRICT ATTORNEY**
COUNTY OF NEW YORK
ONE HOGAN PLACE
New York, N. Y. 10013
(212) 335-9000



**ALVIN L. BRAGG, JR.**
DISTRICT ATTORNEY

December 9, 2022

Gideon Orion Oliver, Esq.
277 Broadway, Suite 1501
New York, NY 10007

                Re: *Trevor Britvec, et. al. v. City of NY, et.al.*
                21-CV-10832

Dear Mr. Oliver:

    I write on behalf of the New York County District Attorney's Office ("DANY"), a non-party in the above action. I write to request that you seek the unsealing of the grand jury investigation in state court. If the grand jury proceedings are unsealed, DANY will provide a privilege log, asserting privileges over records you seek to obtain through a subpoena.

    By way of background, on or about October 6, 2022, DANY received your subpoenas *duces tecum*, returnable on October 24, 2022. You sought any and all records relating to the arrests of Trevor Britvec and Francisco Javier Casablanca-Torres on June 3, 2020 near the intersection of 3rd Avenue and 50th Street in New York County. By letter dated October 17, 2022, I wrote that I was unable to locate any responsive records given the information you provided. A computer search with the names and date of arrest you offered did not yield any responsive records, especially since you did not provide any arrest, docket, or summons numbers.[1] On November 17, 2022, you e-mailed and called me seeking a meet and confer regarding the subpoena. We spoke later that same day. In sum and substance, I re-iterated that I exercised due diligence in trying to locate the sought-after records. It was only during that telephone call did you provide the names of Assistant District Attorneys ("ADA") who conducted an investigation into the arrests of the plaintiffs. Once I was provided with this additional information, I reached out to the supervising ADA who was familiar with the investigation. I was granted electronic access to the relevant files on November 28, 2022. I updated you with this information via e-mail on November 29, 2022, stating in sum and substance that the files were extensive and that you should expect a letter and the first installment of a privilege log and/or disclosure on or about December 12th.

---

[1] Even though DANY asked you in June 2020, for the name of the person you represent, you refused to do so. It was not until May 2021, almost one year after the incident that you provided two names -- Francisco Javier Casablanca-Torres and Trevor Britvec. Both plaintiffs were issued summonses at the incident.

A review of these files showed that a Grand Jury investigation into the incident was opened on June 30, 2021 and continued until August 15, 2022, after which the investigation was sealed. By order dated August 19, 2022, Justice Steven M. Statsinger of the New York County Supreme Court, ordered, upon DANY's motion, the sharing of the Grand Jury materials solely with one other agency and both the affirmation and order remain sealed by the state court judge.

During the course of this Grand Jury investigation, subpoenas were issued for records maintained by the NYPD Legal Bureau. Plaintiffs should first make an application with the state court for disclosure of material obtained during the course of the Grand Jury investigation. This practice serves "both comity and practicality." *Dave v. City of Suffolk*, 2017 U.S. Dist. LEXIS 85040, *12-14; *Anilao v. Spota*, 918 F. Supp. 2d 157, 170-72 (E.D.N.Y. 2013)("as a matter of comity" the party seeking state grand jury materials for "purposes of a federal civil lawsuit should first make its application to the state court supervising the grand jury."); *John Piro v. City of New York, et. al.* No. 15-CV-3206 (CM) (S.D. N.Y. Dec. 9, 2015)(court order that plaintiff "must seek relief before the state court that supervised the relevant grand jury."). Moreover, when the issue is raised in the state court which oversees grand jury proceedings, this "helps 'to ensure that the important state interest in secrecy is thoroughly considered.'" *Dave* at *13, quoting *Socialist Workers Party v. Grubisic*, 619 F.2d 641, 644 (7th Cir. 1980). Indeed, "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218-219 (1979).

Pursuant to New York CPL §190.25(4), the proceedings of the grand jury are secret. The statute provides that no grand juror or other person specified in CPL §190.25(3) and Penal Law §215.70 may "disclose the nature of the substance of any grand jury testimony, or any decision, result or other matter attending a grand jury proceeding" except in the lawful discharge of his duties or upon written order of the court. CPL §190.25(4)(a). In *People of the State of New York v. DiNapoli*, 27 N.Y.2d 229, 235 (1970), the Court of Appeals articulated numerous reasons for traditional grand jury secrecy, which include: 1) to protect an innocent person from unfounded accusations if no indictment is returned; and 2) to assure prospective witnesses that their testimony will not be disclosed so that they will be willing to testify freely. The reasons to preserve grand jury secrecy are the same at the federal level. *See Douglas Oil*, 441 U.S. at 219, n. 10 (among the reasons to maintain grand jury secrecy are: "to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes" and "to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation.").

In state court, plaintiffs must demonstrate a compelling and particularized need. *Nelson v. Mollen*, 175 A.D.2d 518, 519 (1st Dept. 1991); *In re District Attorney of Suffolk County*, 58 N,Y.2d 436, 444 (1983). In deciding on this issue, the state court must balance the competing interests involved, including the public interest in disclosure against that in secrecy. *DiNapoli*, 27 N.Y.2d at 234. Thus, in civil actions, where the party seeking disclosure of certain portions of the grand jury proceedings makes a "threshold showing of compelling and particularized need for access", the court may then use its discretion by "balancing the public interest in disclosure against the public interest in secrecy to determine whether disclosure is warranted." *Nelson*, 175 A.D.2d at 519.

Likewise, a federal court must determine whether the particularized need outweighs the need for grand jury secrecy. To establish a particularized need, plaintiff "must show [1] that the material [sought] is needed to avoid a possible injustice in another judicial proceeding, [2] that the need for disclosure is greater than the need for continued secrecy, and [3] that [the] request is structured to cover only material so needed." *Baynes v. Ruderfer*, 15-CV-2898 (AT), 2017 U.S. Dist. LEXIS 20711, at *6 (S.D.N.Y. Feb. 14, 2017)(*quoting Douglas Oil*, 441 U.S. at 222).

It is DANY's position that plaintiffs cannot make a showing of any particularized need, let alone one that outweighs the need to maintain grand jury secrecy. Significantly, there are other avenues of discovery such as depositions and other document discovery. The vast majority of the materials were obtained from the NYPD Legal Bureau. DANY will await plaintiffs' motion to unseal the Grand Jury materials obtained during the course of the investigation. This motion should be addressed to Justice Steven M. Statsinger of the New York County Supreme Court, who unsealed the materials to one agency and maintained the secrecy of the grand jury investigation to all other entities.

Besides the grand jury privilege, DANY asserts other privileges. DANY will provide a detailed privilege log pursuant to Rule 26(b)(5) and Local Rule 26.2 if plaintiffs file a motion to unseal the grand jury proceedings which is granted. Nothing in this letter should be construed as a waiver of DANY's right to assert applicable privileges in a privilege log that would protect from disclosure the records obtained during the course of the investigation. This letter provides an overview of the categories of records DANY possesses and some of the privileges we will assert.

The records fall into six categories: 1) video consisting of ARGUS camera footage showing the intersection of 3rd Avenue and East 50th Street and body worn camera ("BWC") footage of the officer assigned to arrest plaintiffs as well as the BWC of other officers who were at the location; 2) confidential interviews with several NYPD officers who were represented by lawyers[2]; 3) cell site search warrant results of NYPD-issued cellphones; 4) roll call lists and detail logs of NYPD precincts and units known to be at the scene; 5) photos and videos taken from social media and news reports regarding the protest; 6) analysis of uniforms and shields that units within the NYPD wear, as well as confidential memoranda regarding the legal analysis of the results of the investigation.

1. <u>Video</u>: the ARGUS camera footage and the BWC is obtainable from another source, NYPD Legal Bureau, which would pose a lesser burden upon non-party DANY to produce and avoids lifting the secrecy of the grand jury investigation. *See* Fed. R. Civ. P §26(b)(2)(i); *Dove v Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1989). Furthermore, courts have held nonparty status to be a "significant" factor in determining whether discovery is unduly burdensome. *Solarex Corp. v. Arco Solar, Inc.*, 121 F.r.D. 163, 179 (E.D.N.Y. 1988). And, these videos are protected by the law enforcement privilege. The purpose of this privilege is to "'prevent disclosure of law enforcement techniques and procedures, to preserve the

---

[2] DANY conducted interviews with plaintiffs who were accompanied by their civil attorneys. Records of these interviews will be provided.

confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individual involved in an investigation, and otherwise to prevent interference with an investigation." *In re City of New York*, 607 F.3d 923, 941(2d Cir. 2010) *quoting In re Department of Investigation*, 856 F.2d 481, 484 (2d Cir. 1988).  Here, disclosure of the ARGUS camera footage would reveal the location of the cameras and the nature of this surveillance. *United States v. Van Horn*, 789 F.2d 1492, 1507-08 (11th Cir. 1986)(law enforcement privilege protects the identity and location of a police observation post, and "the nature and location of electronic surveillance equipment.").

2. Interviews: Records reflecting interviews with various NYPD officers are privileged. These interviews were conducted with promises of confidentiality and in the presence of attorneys who represented the individual officers. The informer's privilege clearly protects the identities of individuals who have cooperated with law enforcement, in addition to any communication or information provided to the prosecutor.  To disclose such information would jeopardize and discourage further cooperation by witnesses with law enforcement or DANY in future criminal investigations and prosecutions. *Roviano v. United States*, 353 U.S. 53, 59 (1957); *Ortiz v. United States Department of Health and Human Services*, 70 F.3d 729 (2d Cir. 1995); *Cullen v. Margiotta*, 811 F.2d 698 (2d Cir. 1987).

Furthermore, the law enforcement privilege is applicable since it is designed to "preserve the confidentiality of sources" and "safeguard the privacy of individuals involved in an investigation." *In re city of New York*, 607 F.3d at 941.  Additional privileges to this category of records are: privacy of non-parties to the case; attorney work product to the extent records reflect investigative and prosecutorial strategy and impressions of witness credibility.

3. Cell Site Search Warrants and Results: The affirmation for search warrants of cell sites, and the results of the cell site searches of NYPD-issued cellphones are sealed.[3]  DANY cannot provide what we are prohibited by law to disclose absent an unsealing order upon a motion by plaintiff in state court. Justice Kate Paek of the New York County Supreme Court issued these warrants and sealed the affirmations on May 31, 2022.

Furthermore, the law enforcement privilege applies to these documents.  The affirmations and results of the cell site searches are the products of a long-term investigation involving the use of numerous law enforcement techniques to pinpoint the whereabouts and identify numerous NYPD officers during the massive riots and protests in the summer of 2020.  To broadcast the capabilities and short comings of these techniques would surely allow criminals to tailor their conduct to evade detection.  *See United States v. Alimehmeti*, 284 F.Supp. 3d 477, 493 (S.D.N.Y. 2018)("methodology used to facilitate recordings . . .squarely pertains" to law enforcement techniques and procedures."; *Powell v. United States*, 19-CV-11351 (AKH), 2022 U.S. Dist. LEXIS 108630, at *7 (S.D.N.Y. June 17, 2022)(law enforcement privilege applicable to search warrant that referenced to a "long-term investigation.").

Also applicable is the informer's/privacy privilege of non-parties in this case.  The search warrants were obtained for evidence of possible targets of the investigation.  This investigation is sealed, with no arrests.  As plaintiffs are aware, after extensive efforts, DANY was unable to

---

[3] DANY will provide records of the signed search warrants with redactions relating to the personal privacy of non-parties.

identify two targets, "J.D. Khaki pants" and "J.D. Black shirt." The non-disclosure of the affidavits and results of the cell site searches is necessary to "protect . . . innocent person[s] form unfounded accusations." *DiNapoli*, 27 N.Y.2d at 235.

4. <u>Roll Call Lists and Detail Logs</u>:  The lists and logs of NYPD precincts and units known to be at the scene are obtainable from the NYPD Legal Department, thereby not involving the secrecy of the grand jury investigation.  DANY also asserts the following privileges: law-enforcement privilege; privacy of non-parties to the case; not relevant and not proportional to the needs of the case.

5 and 6. <u>Photos and Videos from social media and news; analysis of uniforms and shields.</u>  During the course of the grand jury investigation, DANY obtained, analyzed, and when able to so, enhanced photos and videos.  Investigative decisions on what to look for, obtain, analyze and enhance are plainly covered by the law enforcement and deliberative process privileges, in addition to constituting attorney work product pursuant to the grand jury investigation. *See generally United States v. Wey*, 252 F. Supp. 3d 237, 249-52 (S.D.N.Y. 2017) (explaining the legal standards for deliberative process and law enforcement privileges).

In sum, DANY requests that plaintiffs make a motion to unseal the grand jury proceedings to obtain grand jury materials.  The proper forum to do so is the New York County Supreme Court.  DANY reserves all other applicable privileges and will provide a privilege log if the grand jury proceedings are unsealed.

Sincerely,

*Christina Ante*

Christina Ante
Assistant District Attorney
Civil Litigation Unit
(212) 335-9149

cc: Andrea Osgood and
Richard Bahrenburg
Assistant Corporation Counsels
New York City Law Department